IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| SOUTHERN INDUSTRIAL CONTRACTORS, LLC | PLAINTIFF |
| v. | CAUSE NO. 1:17CV255-LG-JCG |
| NEEL-SCHAFFER, INC.; T.L. WALLACE CONSTRUCTION, INC; THOMPSON ENGINEERING, INC.; CH2M HILL, INC.; W. G. YATES & SONS CONSTRUCTION COMPANY; ROY ANDERSON CORP.; YATES ANDERSON, JV; QUALITY ENGINEERING SERVICES, INC.; and MISSISSIPPI STATE PORT AUTHORITY AT GULFPORT | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER DENYING QUALITY ENGINEERING SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT**

**BEFORE THE COURT** is the [194] Motion for Summary Judgment filed by the defendant Quality Engineering Services, Inc. (QES) in this lawsuit that arose out of a construction project at the Port of Gulfport, Mississippi. The parties have fully briefed the Motion. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that the Motion for Summary Judgment must be denied, because QES has not met its initial burden of demonstrating that material facts are not in dispute.

## BACKGROUND

The plaintiff, Southern Industrial Contractors, LLC, served as the general contractor for the West Pier Facilities project at the Port of Gulfport, Mississippi. It

filed this lawsuit against the project's owner, Mississippi State Port Authority (MSPA)[1], as well as the project's consultants and engineers — Neel-Schaffer, Inc., CH2M, T.L. Wallace Construction, Inc., Thompson Engineering, Inc., W.G. Yates & Sons Construction Company, Roy Anderson Corp., Yates Anderson, JV, and QES. Southern Industrial alleges that these defendants failed to provide notice of a large underground debris field at the project site. Southern Industrial claims it was required to excavate the debris, which made the project much more expensive and time-consuming. QES filed the present Motion for Summary Judgment.

## DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact and that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324-25. The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing

---

[1] MSPA has yet to make an appearance in this lawsuit.

the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

## I. SOUTHERN INDUSTRIAL'S BREACH OF CONTRACT CLAIM

No contract existed between QES and Southern Industrial, but Southern Industrial asserts that it is a third-party beneficiary of the contract between QES and MSPA. It argues that QES breached its duty to notify other contractors on the project of the debris field that caused extra expense and delay during the project. "Third-party-beneficiary status arises from the terms of the contract." *Simmons Hous., Inc. v. Shelton ex rel. Shelton*, 36 So. 3d 1283, 1286 (Miss. 2010).

> In order for a third person beneficiary to have a cause of action, the contracts must have been entered into for his benefit, or at least such benefit must be the direct result of the performance within the contemplation of the parties as shown by its terms. There must have been a legal obligation or duty on the part of the promisee to such third person beneficiary. This obligation must have a legal duty which connects the beneficiary with the contract. In other words, the right (of action) of the third[-]party beneficiary to maintain an action on the contract must spring from the terms of the contract itself.

*Rein v. Benchmark Constr. Co.*, 865 So. 2d 1134, 1146 (Miss. 2004). Therefore, the following three factors must be present to create third-party beneficiary status:

> (1) the contract between the original parties was entered for that person's or entity's benefit, or the original parties at least contemplated such benefit as a direct result of performance; (2) the promisee owed a legal obligation or duty to that person or entity; and (3) the legal obligation or duty connects that person or entity with the contract.

*Id.* "[A] third party beneficiary may sue for a breach of the contract only when the condition which is alleged to have been broken was placed in the contract for his

direct benefit." *Rosenfelt v. Miss. Dev. Auth.*, 262 So. 3d 511, 519 (Miss. 2018). "A mere incidental beneficiary acquires by virtue of the contractual obligation no right against the promisor or promisee." *Id.* Therefore, an individual or entity who did not sign the contract, was not alluded to in the contract, and received no direct benefit from the contract does not acquire third-party beneficiary status. *Simmons Hous., Inc.*, 36 So. 3d at 1286-87.

In the present lawsuit, the parties do not dispute that QES's scope of work on the West Pier Facilities project was governed by Task Order Number 9, which provided that QES would "provide Construction Material Testing (CMT) and inspection services" for the project. (Def.'s Mot. Ex. B to Ex. 5, ECF No. 194-5.) The Task Order required QES's work to

> conform to the following [Port of Gulfport Restoration Program] documents and any subsequent revisions as applicable:
>
> 1. Guidelines for Engineering Professional Services
> 2. Construction Management Manual
> 3. Survey Manual
> 4. CAD Standards Manual
> 5. Basis of Design
> 6. Port of Gulfport Restoration Program Assumptions
> 7. Document Control System
> 8. Quality Management Guidelines for Consultants
> 9. Task order Process
> 10. Grant Compliance Manual.

(*Id.*) Southern Industrial argues that the Guidelines for Engineering Professional Services incorporated into the Task Order impose the following duties on QES: (1) to attend weekly meetings as needed . . . to review the status of construction, resolve current issues, **identify potential issues**, discuss the quality of the work

-4-

being provided, coordinate activities for [the] following week, and attend to any additional matters;" and (2) "[c]onfirm the accuracy and adequacy of the Project Drawings and Specifications for practical and economical construction of the facilities (constructability and bidability)." (Pl.'s Resp. Ex. CC §13.2.1, ECF No. 260-29 (emphasis added).) Southern Industrial claims that both these duties were incorporated into QES's agreement for Southern Industrial's benefit. Southern Industrial also argues that QES breached both these duties because QES knew about the underground debris at the project site, but it failed to notify any of the other contractors.

In support of its Motion for Summary Judgment, QES submitted an affidavit signed by its President, John P. Oliver, III, in which he testified that "QES's scope of work only concerned testing concrete strength, registering blow counts, performing soil compaction tests, and running gradations on excavated soil to determine if the soil could be reused at the Port." (Def.'s Mot. Ex. 5, ECF No. 194-5.) He further testified that QES's work was for the benefit of MSPA and that QES did not design the project and was not involved in any pre-project planning or pre-design soil testing. Finally, he testified that "QES did not perform engineering, contract administration[,] or project management services for the Project." (*Id.*) Jonathan T. Daniels, Executive Director of the MSPA, has given identical testimony via affidavit. (Def.'s Mot. Ex. 6, ECF No. 194-6.) As a result, QES argues that the duties imposed by the Guidelines for Engineering Professional Services did not apply to QES.

During QES's 30(b)(6) deposition, Oliver testified that QES's work on the port project was classified as engineering services but not professional engineering services. (Pl.'s Resp. Ex. B, at 271, ECF No. 260-2.) Therefore, this testimony appears to conflict with the testimony given in Oliver and Daniels' affidavits.

In its reply, QES appears to retract its prior argument that it did not provide engineering services. It argues that the project's Guidelines for Engineering Professional Services did not govern its work on the project, but it does not provide any support for this argument. Therefore, at this stage of the litigation, a genuine issue of material fact exists regarding whether and to what extent QES's work was governed by the project's Guidelines for Engineering Services. Furthermore, there is insufficient information in the record to permit the Court to determine whether Southern Industrial directly benefitted from QES's contract with MSPA. As a result, QES's Motion for Summary Judgment must be denied as to Southern Industrial's breach of contract claim.

## II. SOUTHERN INDUSTRIAL'S NEGLIGENCE CLAIM

QES seeks summary judgment as to Southern Industrial's negligence claim, because it claims it owed no duty to Southern Industrial. "Duty and breach of duty are essential to finding negligence and must be demonstrated first." *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 174 (Miss. 1999).

> A duty to act reasonably toward another may . . . arise by virtue of some undertaking regardless of the existence of a legal contract. [C]ontracts are not the only way in which the law imposes a duty of care. Whenever a person does some act, the law imposes a duty upon that person to take reasonable care in performing that act.

*Montgomery v. CitiMortgage, Inc.*, 955 F. Supp. 2d 640, 649 (S.D. Miss. 2013) (internal quotation marks omitted). "[T]he important component of the existence of the duty is that the injury is reasonably foreseeable." *Rein*, 865 So. 2d at 1146. "This court's task in a diversity action is to apply the law of Mississippi, not to create . . . a duty, which is not yet recognized by the Mississippi Supreme Court, nor which is a rational extension of an already existing duty." *H.R. by & through Robinson v. Double J. Logistics, LLC*, No. 3:16CV655TSL-RHW, 2017 WL 4158853, at *6 (S.D. Miss. Sept. 19, 2017) (internal quotation marks omitted).

The Mississippi Supreme Court has held that "design professionals," including architects and engineers, have a "duty to exercise ordinary professional skill and diligence." *Magnolia Constr. Co. v. Miss. Gulf S. Eng'rs Inc.*, 518 So. 2d 1194, 1202 (Miss. 1988). "Further, Mississippi law allows third parties to rely on a design professional's contractual obligation to the owner." *Id.* "Because of this contractual obligation to the owner, the architect owes a further duty, sounding in tort, to the contractor who relies upon the design to his economic detriment." *Id.* (quoting *Mayor & City Council of Columbus, Miss. v. Clark-Dietz, Inc.*, 550 F. Supp. 610, 624 (N.D. Miss. 1977)). The *Magnolia* court recognized that a duty can be: (1) created by contract, (2) assumed either through the party's conduct on the project or through contracts with the project owner, or (3) created by common law. *See id.*

QES's Motion for Summary Judgment as to Southern Industrial's negligence claim must be denied for the same reasons the Court has denied summary

judgment as to the breach of contract claim.  QES's duties under the project are unclear due to the conflicting evidence and testimony presented concerning QES's Motion as well as the lack of any support for QES's assertion that it had no duty to disclose the existence of the debris field.  The Court cannot, at this time and on this record, grant summary judgment in QES's favor.

## CONCLUSION

For the foregoing reasons, QES's Motion for Summary Judgment must be denied.  All motions to strike and requests for other relief that were embedded in the parties' summary judgment pleadings are denied at this time.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the [194] Motion for Summary Judgment filed by the defendant Quality Engineering Services, Inc., is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 3rd day of July, 2019.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE